## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **KRISTI WILLOBY,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-24-379-SPS** |
| | ) | |
| **LELAND DUDEK, Acting** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

The claimant Kristi Willoby, requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g).  She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled.  For the reasons discussed below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.*

§ 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."  *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  *See also Casias*, 933 F.2d at 800-01.

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities.  If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied.  If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of her past relevant work or if his RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

**Procedural History**

The Court has jurisdiction under 42 U.S.C. § 405(g). Claimant was born on July 17, 1969, and was 51 years old on the alleged disability onset date. (Tr. 187).  She has completed high school and has past relevant work as a receptionist. (Tr. 23). Claimant applied for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act) in March 2022. (Tr. 187-88). After a hearing (Tr. 42-69), an ALJ denied her application for benefits. (Tr. 7-30). The Agency's Appeal's Council denied Claimant's request for review (Tr. 1), and as such, the May 2024 decision stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made her decision at step five of the sequential evaluation.  At step two, the ALJ found that Claimant had severe physical impairments including degenerative disc disease of the cervical, thoracic, and lumbar spine; fibromyalgia; diabetes mellitus; Hashimoto thyroiditis; obesity, and anxiety. (Tr. 12). She determined that Claimant had the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations:

> [O]ccasional climbing ramps and stairs, stooping, kneeling, crouch, crawling, and balancing as that term is defined in the Dictionary of Occupational Titles (DOT) and Select Characteristics of Occupations (SCO). [Plaintiff] cannot climb ladders, ropes, or scaffolds; can carry out detailed but not complex instructions and can deal with occasional changes in a routine work setting.

(Tr. 15). At step four, the ALJ found that Claimant is capable of performing past relevant work as a receptionist, sedentary exertion, as generally performed. (Tr. 23). Alternatively, the ALJ found at step five that there are jobs that exist in significant numbers in the national economy that Claimant can also perform, including the representative occupations of cashier II, marker, and

small product assembler. (Tr. 24). Thus, the ALJ found that Claimant has not been disabled from May 1, 2021, through the date of the decision. (Tr. 25).

### Review

The relevant evidence before the ALJ reflects that Claimant complained of neck and back pain prior to her alleged onset date and endorsed a ten-year history of pain. (Tr. 370, 795). On April 30, 2020, prior to the date Claimant alleged she became disabled, she saw neurosurgeon, Kyle Mangels, M.D. (Tr. 370). Dr. Mangels ordered an MRI of Claimant's neck. The MRI of the neck showed some cord impingement in the cervical spine especially on the axial views particularly at C4-5, C5-6, and C6-7. (Tr. 371). Dr. Mangel ordered a thoracic spine MRI, and reported Claimant may need to consider a cervical fusion surgery anteriorly. (Tr. 372).

Throughout 2020 and early 2021, Claimant followed with her primary care clinic—she did not return to Dr. Mangels for over a year. (Tr. 429-51). In April 2021, just a month prior to the date she allegedly became disabled, Claimant returned to see Dr. Mangels with complaints of neck, back, arm, and leg pain. (Tr. 361). She was neurologically stable, with normal strength, sensation, and reflexes, as well as a normal gait. (Tr. 361-62). Dr. Mangels again ordered imaging of Claimant's spine and noted the previous abnormal MRI from C$-7. (Tr. 362).

A new MRI of the neck showed degenerative changes throughout multiple levels, including continued narrowing of the spine at the lowest level in the neck. (Tr. 383-84). An MRI of the thoracic spine showed evidence of a tumor on the spinal cord. (Tr. 381).

Claimant returned to Dr. Mangels in May 2021 and mentioned she recently quit her job due to her symptoms. (Tr. 364-65, 367-68). Based on the findings on imaging, Dr. Mangels recommended surgery on her neck. (Tr. 365). He ordered additional imaging to evaluate the findings in her middle back. (Tr. 368).

On October 18, 2021, Claimant went for imaging of her middle and lower back. (Tr. 378, 380). An MRI showed evidence of large fluid-filled cyst in the middle of the spine, as well as a small, or "mild" crack between two vertebrae of the lower spine. (Tr. 378-80). Claimant saw her primary care clinician throughout the remainder of 2021 and the first part of 2022 and was given medications for her chronic conditions. (Tr. 404-08, 410-14, 416-20, 575-79, 582-86, 589-93).

In August 2022, Claimant underwent a psychological consultative examination with Jacqueline Bock, Ph.D. (Tr. 551). At that time, she was in Alaska, and she reported she had moved there with her husband, who was a commercial fisherman. (Tr. 551). Despite complaints of pain, Claimant drove herself to the appointment, had no difficulty getting out of her truck, and walked quickly and effortlessly. (Tr. 551-555). Dr. Bock stated that "[even] though [Claimant] stated that she was in pain…she did not appear to be in pain." (Tr. 553). While she stated it was "beyond the scope of this evaluation and this writer's expertise to evaluate Ms. Willoby's medical problems r their effect on her ability to engage in activities of daily living, sustain employment, or interact with others socially," she mentioned Claimant may be "malingering for secondary gain." (Tr. 553-55).

In February 2023, Claimant underwent a physical consultative examination with Shelby Tripod, D.O. (Tr. 622). She complained of pain throughout her body, and when asked about her treatment, she stated she "mostly just trie[d] to deal with the pain," and at most, used over-the-counter pain medications. (Tr. 622). Claimant had positive straight leg raising and limited range of motion of her left shoulder, lower back, and both hips. (Tr. 625-27). However, she had full strength and normal sensation throughout, and she walked with a normal gait. (Tr. 624, 627).

In March 2023, a state agency medical consultant, William Oehler, M.D., reviewed Claimant's case. (Tr. 75-76). After reviewing imaging of the spine, as well as treatment notes from

a variety of clinicians, he found Claimant could perform a full range of light work activity. (Tr. 75-76). In July 2023, a second State agency medical consultant, Mohamed Kanaa, M.D., agreed with the prior assessment. (Tr. 84-87). He noted that "[p]ain was considered," but the medical evidence supported a light residual functional capacity. (Tr. 86).

In August 2023, Claimant presented to the emergency room with complaints of acute onset right shoulder pain, explaining that her symptoms only recently started after a chiropractic appointment. (Tr. 816). Claimant had some decreased sensation on the right, as well as decreased grip strength—rated as three out of five—on the right. (Tr. 818). A new MRI of the neck showed severe narrowing at the lowest level in the neck. (Tr. 818). Claimant was not a candidate for emergent intervention, but rather, she was given pain medications and released. (Tr. 821).

In October 2023, two months after her emergency room visit, Claimant attended a consultation with a new neurosurgeon, Isaac Karikari, M.D. (Tr. 794). At that time, she discussed her longstanding symptoms. (Tr. 795). Upon examination, Claimant had decreased strength—rated as four out of five—in her right triceps and right wrist flexion. (Tr. 796). She had normal sensation and symmetric reflexes. (Tr. 796). She walked with a normal gait. (Tr. 796). After examining Claimant and reviewing the recent imaging of her spine, Dr. Karikari explained surgery was an option given the weakness in her right arm. (Tr. 799). However, given her hesitation to proceed with surgery, Dr. Karikari recommended a trial of oral steroids, along with physical therapy. (Tr. 799).

Claimant began physical therapy in early November 2023. (Tr. 750). After two sessions, she opted to stop therapy to pursue injections. (Tr. 753). By early 2024, it is unclear if Claimant proceeded with injections. She visited her primary care clinic in early January 2024 but raised no

-6-

new concerns. (Tr. 688-92). Clinically, she had some tenderness, but no other musculoskeletal or neurologic deficits were documented. (Tr. 692-93).

Claimant asserts, *inter alia*, that the ALJ failed to explain why one consultative examination should be given more weight than the others resulting in an improper RFC. The Court finds the decision of the ALJ is inconsistent with the evidence.

In the instant case, the ALJ finds that although Dr. Karikari observed right arm weakness on October 9, 2023, and a physical examination during an August 17, 2023, emergency room visit revealed Claimant's grip strength to be 3/5 on the right, no manipulative limitations should be incorporated as part of the RFC. The ALJ concludes this because during a February 25, 2023, consultative examination, Claimant had normal grip and muscle strength in her upper and lower extremities. (Tr. 21). However, the record reflects that during a physical therapy session dated November 8, 2023, Claimant exhibited "poor strength" in the bilateral upper extremities and cervical spine. (Tr. 750). The record also reveals that Patricia Smith, APRN, Tina Fort, APRN, and Christina Gerena, APRN, observed on January 3, 2023, April 3, 2023, October 19, 2023, November 20, 2023, and January 9, 2024, that Claimant repeatedly had tenderness in her right-hand finger joints for more than a year. (Tr. 635, 650, 692, 699, 707). The ALJ fails to explain why one consultative examination should be given more weight than these eight other examinations during which medical providers observed manipulative abnormalities.

Further, although the ALJ found the opinions of the state agency physical consultants to be persuasive because they were supported by MRI imaging and the one-time consultative examination showed normal strength in the upper and lower extremities, these statements by the ALJ do not serve as a proper analysis of Claimant's testimony. (Tr. 22-23). Mohammed Kanaa, M.D., a state agency physical consultant, provided a vague analysis of his own opinion on July 31, 2023, by simply stating that the "MER [medical evidence of record] supports current RFC" and "[p]ain was considered and

does not otherwise limit." (Tr. 86). This analysis does not aid the reviewer in understanding why the evidence led to a light RFC with no reaching, handling, fingering, or feeling limitations. "[I]t is not sufficient for our adjudicators to make a single, conclusory statement that the 'individual's statements about his or her statements have been considered." SSR 16-3p. In the present case, it is insufficient that the ALJ cited Claimant's imaging as evidence supporting her light RFC. Her thoracic and cervical MRIs reveal severe findings, and Claimant has been offered surgery as treatment. She also exhibited a positive straight leg raise bilaterally on examination. (Tr. 627).

Moreover, Claimant testified her impairments, including cervical stenosis, a thoracic lesion, and fibromyalgia, cause significant pain on a daily basis and result in limitations in her ability to lift, stand, walk, sit, reach, and use her hands. (Tr. 253, 258). Claimant noted that she has problems gripping items in her Function Report dated April 27, 2023. (Tr. 258). She testified that she could sit for only 30 minutes in a day and stand in one place for three to five minutes. (Tr. 59). Based on the vocational expert's testimony, a restriction to sedentary work and occasional handling and fingering with the right upper extremity would preclude Claimant's past relevant work and there would be no transferable skills. (Tr. 67). Additionally, Claimant's need to change positions during the workday would result in her being off-task for more than fifteen percent of the day and would preclude competitive work. (Tr. 68).

When a medical source assesses functions that limit a claimant's work activity, the ALJ must explain why that functional limitation does not appear in the RFC. *Frantz v. Astrue*, 509 F.3d 1299, 1302-1303 (10th Cir. 2007); *Givens v. Astrue*, 251 Fed. Appx. 561, 568 (10th Cir. 2007). The Commissioner observes that if the ALJ finds an opinion of a medical source only partly persuasive, she can reference sections she chooses and ignore other parts. However, if this is what the ALJ intended she should have explained why the limitations were not fully addressed in Claimant's RFC. *Frantz*, 509 F.3d at 1302-1303; *Givens*, 251 Fed. Appx. at 568.

**Conclusion**

In summary, the Magistrate Judge finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is not supported by substantial evidence. The decision of the Commissioner must accordingly be reversed, and the case remanded to the ALJ for further analysis as discussed above.  If on reconsideration the ALJ finds that any changes must be made to Claimant's RFC, she should then redetermine what work, if any, Claimant can perform and ultimately whether she is disabled.

Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERD this 16th day of April, 2025.**

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**